UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KENNETH WILEY, *et al.*,

      Plaintiffs,

      v.

TRIAD HUNTER LLC,

      Defendant.

CASE NO. 2:12-CV-00605
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Norah M. King

## OPINION AND ORDER

This diversity action arises from a dispute concerning an oil and gas lease between Plaintiffs and Defendant Triad Hunter LLC ("Triad"). This matter is before the Court for consideration of Triad's Motion to Dismiss Second Amended Complaint Counts Two, Four, and Five (ECF No. 45); the Motion to Intervene by Chesapeake Exploration, L.L.C. and CHK Utica, L.L.C. (ECF No. 80); and Triad's Motion to Alter this Court's June 5, 2013 Order (ECF No. 93). For the reasons that follow, Triad's Motion to Dismiss is **GRANTED** in part and **DENIED** in part; and the Motion to Intervene by Chesapeake Exploration, L.L.C. and CHK Utica, L.L.C. is **GRANTED**; and Triad's Motion to Alter is **DENIED**.

## I. BACKGROUND

A.    **Relevant Facts**

Plaintiffs, consisting of a group of individual landowners from Noble County Ohio, entered into a series of oil and gas leases (hereinafter "the Leases") with Anschutz Exploration Corporation ("Anschutz"). (Second Am. Compl. ¶ 6, ECF No. 43.) Rights under the Leases were subsequently assigned to Triad. (*See* Second Am. Compl. ¶¶ 7–11.) According to

Plaintiff, Anschutz failed to notify them of the relevant assignments. (*Id.* at ¶ 9.)

The Leases provided that "Lessor hereby grants, leases and lets exclusively to Lessee all the oil and gas and their constituents, whether hydrocarbon or non-hrdrocarbon, underlying the land herein leased . . . ." (*See* Pl. Wiley Lease ¶ 1, ECF No. 44-2.) The Leases remained in effect for a primary term and then gave the lessee a right to extend this term by submitting additional payment. (*Id.* at ¶¶ 3–4.)

Importantly, for the purposes of this action, the Leases each contain the following provision:

> **PREFERENTIAL RIGHT TO RENEW.** If, at any time during the primary term hereof, or within one (1) year from the expiration, cancellation or termination of this Lease, Lessor receives an acceptable, bona fide third-party offer to lease the Leasehold, in whole or part, Lessor shall promptly provide the Lessee, in writing, of all of the verifiable particulars of such offer. Lessee shall have thirty (30) days from the receipt thereof to advise Lessor, in writing, of its agreement to match said third-party offer as to all terms and consideration; immediately thereafter, Lessor and Lessee shall take all cooperative steps necessary to effectuate the consummation of said transaction and the survival of said transaction through any statutorily mandated right of cancellation thereof. Any lease or option to lease the Leasehold, in whole or part, granted by Lessor in contravention of the purposes of this paragraph shall be deemed null and void.

(Pl. Wiley Lease ¶ 14.)[1] The parties dispute the proper interpretation of this provision. Plaintiffs contend—and maintain that Triad's predecessors represented to them during the contracting process—that the provision permits landowners to receive third party offers at any time. (*See* Second Am. Compl. ¶ 17.) Plaintiffs assert that in response to such an offer that the lessee must then either (1) match such offers or (2) cancel the Lease regardless of whether the relevant Lease

---

[1] Although the parties have not filed all of the relevant Leases with the Court, apparently some of the Leases at issue do not contain the phrase "or within one (1) year from the expiration, cancellation or termination of this Lease" within this provision.

term has expired.  (*Id.*)

Plaintiffs maintain that they have either already received or desire to solicit/accept third-party offers regarding oil and gas rights.  (*Id.* at ¶ 22.)  Plaintiffs assert, however, that Triad has made statements—both through public record and in direct communications with Plaintiffs—indicating that they will not honor Plaintiffs' interpretation of the "Preferential Right to Renew" provision and allow Plaintiffs to solicit and accept third-party offers.  (*See id.* at ¶ 20.)

**B.      Procedural Background**

Plaintiffs brought this action in June 2012.[2]  Within the Second Amended Complaint, Plaintiffs seek a declaration that if Triad fails to match third-party offers the Leases terminate and cancel under the terms of the "Preferential Right to Renew" provision.  Plaintiffs also brings a claim for declaratory judgment based on a violation of Ohio Revised Code § 1509.31.  *See* Ohio Rev. Code  § 1509.31 (requiring notification of oil and gas lease assignments).  Additionally, Plaintiffs bring causes of action for anticipatory breach and repudiation, unjust enrichment, and slander of title.  Triad moves to dismiss a number of Plaintiffs' claims on the pleadings.

Proposed Defendants Chesapeake Exploration, L.L.C. and CHK Utica, L.L.C. (collectively "Chesapeake") filed their Motion to Intervene on May 29, 2013.  Chesapeake represents that Anschutz assigned it the Leases in question.  Chesapeake contends that although it assigned certain rights under the Leases to Triad (the right to explore/produce oil and gas at certain depths) it retained other interests in the Leases (including the right to explore/produce oil and gas at other depths).  Consequently, Chesapeake seeks to intervene to protect its interests.

---

[2]  Although Plaintiffs originally filed this case in the Noble County Court of Common Pleas, Triad removed the action to this Court in July 2012.

Finally, on June 5, 2013, the Court issued an Order denying without prejudice Triads'
Motion for Tolling of the Term of Plaintiffs' Leases. Triad now moves the Court to alter its June
5, 2013 ruling.

## II. ANALYSIS

### A. Motion to Dismiss

#### 1. Standard

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the
Federal Rules of Civil Procedure a complaint must contain sufficient factual matter, accepted as
true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550
U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying the plausibility
standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable inference that the defendant is liable
for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The factual allegations of a pleading "must
be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

#### 2. Discussion

Triad seeks dismissal of various claims pursuant to Federal Rule of Civil Procedure
12(b)(6). Specifically, Triad moves to dismiss Plaintiffs' claims under Ohio Revised Code
§ 1509.31 as well as the claims for unjust enrichment and slander of title. The Court will
consider each cause of action separately.

##### a. Ohio Revised Code § 1509.31

Triad first maintains that Plaintiffs' claim under Ohio Revised Code § 1509.31 fails on
the pleadings. Plaintiffs seek declaratory judgment maintaining that Triad's failure to notify

4

them of the Lease assignments, pursuant to § 1509.31, renders the Leases void. Triad contends that dismissal is appropriate because § 1509.31 does not create a private right of action.[3]

Under Ohio law, the Court may not "infer the existence of a private cause of action unless the Ohio General Assembly manifests a 'clear implication' for private causes of action." *McClain v. Nw Cmty. Corr. Ctr Judicial Corr. Bd.*, 440 F.3d 320, 328 (6th Cir. 2006) (citing *Fawcett v. G.C. Murphy & Co.*, 46 Ohio St.2d 245, 249 (1976)). Moreover, "[i]t is a basic doctrine of statutory construction that when the legislature has authorized an action to be instituted by a particular person or office, the suit may not be instituted by another." *Save the Lake v. Hillsboro*, 158 Ohio App.3d 318, 324 (Ohio Ct. App. 2004) (internal quotations omitted).

Here, § 1509.31 provides in pertinent part:

> Whenever the entire interest of an oil and gas lease is assigned or otherwise transferred, the assignor or transferor shall notify the holders of the royalty interests . . . of the name and address of the assignee or transferee by certified mail, return receipt requested, not later than thirty days after the date of the assignment or transfer.

Ohio Rev. Code § 1509.31(A). Chapter 1509 further provides that "[w]hoever violates sections 1509.01 to 1509.31 of the Revised Code . . . shall pay a civil penalty of not more than four thousand dollars for each offense." Ohio Rev. Code § 1509.33(A). Moreover, Chapter 1509 further states that "[t]he attorney general, upon the request of the chief of the division of oil and gas resources management, shall commence an action under this section against any person who violates sections 1509.01 to 1509.31 of the Revised Code . . . ." Ohio Rev. Code § 1509.33(H).

Here, the Court agrees with Defendant that Plaintiffs fail to state a claim based on failure

---

[3] Triad sets forth other grounds for maintaining that Plaintiffs' statutory action fails. Nevertheless, because the Court agrees that the statute does not create a private right of action, it finds it unnecessary to address the remaining arguments.

to notify.[4]  Specifically, the Court finds that § 1509.31 does not create a private right of action.[5]

The Court is unaware of any Ohio authority directly reaching the issue.  The Court, however,

finds no relevant statutory language—and Plaintiffs fail to direct the Court to any such

language—indicating any legislative intent to create such a cause of action.  Rather, the statute

grants authority to the Ohio Attorney General to bring actions for violation of Ohio Rev. Code

§ 1509.31.  Ohio Rev. Code § 1509.33(H).  Under these circumstances, there is no basis for

inferring a private right of action—much less one leading to the voiding of a lease—based on

failure to give notification pursuant to § 1509.31.

### b.    Unjust Enrichment

Triad next moves for dismissal of Plaintiffs unjust enrichment claims.  Triad's sole

contention is that Plaintiffs claims are barred because Plaintiffs have an adequate contractual

remedy pursuant to their Leases.

"Unjust enrichment is an equitable doctrine to justify a quasi-contractual remedy that

operates in the absence of an express contract or a contract implied in fact to prevent a party from

retaining money or benefits that in justice and equity belong to another."  *Turner v.*

*Langenbrunner*, No. CA2003-10-099, 2004 WL 1197213, at *5 (Ohio Ct. App. June 1, 2004).

Under Ohio law, "[a]bsent bad faith, fraud, or some other illegality, an equitable action for unjust

---

[4]  The Court also notes, as Triad emphasizes, that § 1509.31 imposes a duty on the assignor, not the assignee.

[5]  Although Plaintiffs cause of action is technically for declaratory judgment pursuant to Ohio Revised Code § 2721.02, "[i]n the absence of demonstrating an established right, a declaratory judgment does not lie under R.C. 2721.02(A)."  *Scott v. Houk*, 127 Ohio St.3d 317, 322 (2010) (O'Connor, J., concurring); *cf. also Almendares v. Palmer*, 284 F. Supp.2d 799, 810 (N.D. Ohio 2003) ("The Declaratory Judgment Act . . . does not create substantive rights. It merely creates a procedure for adjudicating existing rights.").

6

enrichment cannot exist where there is a valid and enforceable written contract." *Kwikcolor Sand v. Fairmount Minerals Ltd.*, No. 96717, 2011 WL 6775580, at *3 (Ohio Ct. App. Dec. 22, 2011). At the same time, however, "[b]ecause alternative pleading is permissible, a party may plead both a breach-of-contract claim and an unjust-enrichment claim without negating the validity of either claim." *Cristino v. Bureau of Workers' Comp.*, 977 N.E. 2d 742, 753 (Ohio Ct. App. 2012); *see also* Fed R. Civ. P. 8(d) (permitting alternative pleadings and inconsistent claims). Consequently, "[t]he mere presence of both claims in a complaint does not warrant the dismissal of the unjust-enrichment claim . . . ." *Cristino* 977 N.E. 2d at 753.

Here, the Court will not dismiss Plaintiffs' unjust enrichment claims on the pleadings. Plaintiffs are permitted to plead in the alternative and the fact that they plead contract claims is not sufficient to justify dismissal of the unjust enrichment claims. Triad maintains that the existence of valid leases is not in dispute in this case and that any recovery must, therefore, arise under Plaintiffs' Lease claims. Although this may prove to be the case, the existence of valid leases involves underlying factual inquiries that the Court cannot resolve at the pleadings stage. Accordingly, dismissal of the unjust enrichment claims on the pleadings would be inappropriate.

### c. Slander of Title

Finally, the parties dispute whether Plaintiffs state facially plausible slander of title claims against Triad. Plaintiffs specifically assert that, by allowing the relevant Leases and assignments to remain recorded with the Noble County Recorder's Office, Triad slandered the title of Plaintiffs' property. Triad maintains that Plaintiffs pleadings fail to satisfy a number of the elements of slander of title.

"Slander of title is a tort action which may be brought against any one who falsely and

7

maliciously defames the property, either real or personal, of another, and thereby causes him

some special pecuniary damage or loss." *Green v. Lemarr*, 139 Ohio App. 3d 414, 430 (Ohio Ct.

App. 2000) (internal quotations omitted). To establish a slander of title claim, "[t]he claimant

must prove that (1) there was a publication of a slanderous statement disparaging claimant's title;

(2) the statement was false; (3) the statement was made with malice or made with reckless

disregard for its falsity; and (4) the statement caused actual or special damages." *McClure v.*

*Fischer Attached Homes*, 145 Ohio Misc.2d 38, 48–49 (Ohio Com. Pl. 2007) (internal quotations

omitted). "Typically, slander-of-title cases involve documents filed against a particular piece of

property by parties who claim an interest in the property." *Green*, 139 Ohio App.3d at 431. "As

a general rule, wrongfully recording an unfounded claim to the property of another constitutes

slander of title." *McClure*, 145 Ohio Misc.2d at 49.

Here, the Court agrees with Triad that Plaintiffs fail to state facially plausible slander of

title claims. Plaintiffs—within the Second Amended Complaint—offer limited detail regarding

their slander of title claims and rely primarily on simple recitation of the elements.[6] To satisfy

the elements of a slanderous and false statement disparaging title, Plaintiffs appear to base their

claims on recordings with the Noble County Recorder's Office relating to the Leases and their

assignments.[7] Plaintiffs do not actually plead that Triad made any of these recordings. Nor do

[6] To the extent Plaintiffs contend that failure to notify of assignment under Ohio Revised Code § 1509.31 is equivalent to slander of title, the Court finds no basis for this contention.

[7] Within their general factual allegations, Plaintiffs do assert that Triad stated "on the public record" that it would not honor Plaintiffs' interpretation of the Preferential Right to Renew Provision. (*See* Second Am. Compl. ¶ 20.) Such a statement, however, relates to Triad's performance under the Leases and is not a statement directly disparaging Plaintiffs' title. Moreover, there is no indication that such a statement—which was a representation as to Triad's own actions—was false. Consequently, this statement appears to form the basis for Plaintiffs'

8

Plaintiffs allege that the recordings were false at the time they were made. Rather, Plaintiffs maintain that Triads failure to correct such recordings after the fact constitutes slander of title. Plaintiffs fail to offer any authority, however, reflecting that slander of title may be based on such a failure-to-act theory. Considering the element of slander of title, the Court finds that Plaintiffs' failure to plead any facts regarding an affirmative false statement on the part of Triad justifies dismissal.

Moreover, the Court cannot reasonably infer malice or reckless disregard on the part of Triad from Plaintiffs' pleadings. Outside of Plaintiffs' conclusory assertions regarding Triad's intent and state of mind, the Court finds no factual basis from the pleadings for inferring that any statement on the part of Triad was malicious or reckless. Instead, reviewing the Preferential Right to Renew provision at issue,[8] this case appears to involve a good faith dispute regarding the interpretation of a lease provision.[9] At best, Plaintiffs' pleadings briefly indicate that agents of Anschutz, Triad's predecessor, may have made misleading statements in inducing them to enter

---

anticipatory breach claims rather than slander of title claims. Accordingly, at least without further detail, any such statement is insufficient to satisfy the first two elements of slander of title. Regardless, for the reasons stated below, Plaintiffs also fail to sufficiently plead malice or reckless disregard.

[8] The Court may consider documents reference in the Second Amended Complaint, in this case the relevant Leases, without converting Triad's Motion into one for summary judgment. *See Allen v. Int'l Truck and Engine Corp.*, No. 3:07cv361, 2009 WL 863591, at *4 (S.D. Ohio Mar. 31, 2009) (holding that consideration of the contract central to the plaintiff's claims did not require conversion).

[9] Notably, the United States District Court for the Northern District of Ohio has already favored Triad's interpretation in addressing an identically worded lease. *See generally*, *Chesapeake Exploration, LLC v. Catlett Quality Plumbing & Heating, Inc.*, No. 5:12CV188, 2012 WL 5364259 (N.D. Ohio Oct. 30, 2012).

into the various Leases. (*See* Second Am. Compl. ¶¶ 12–17.) Plaintiffs, however, fail to plead

specific facts linking this behavior to any statement of Triad. Under these circumstances, and

without further detail, Plaintiffs' factual allegations fail to establish malice or reckless disregard.

**B.    Motion to Intervene**

   **1.    Standard**

   Chesapeake moves to intervene in this case pursuant to Federal Rule of Civil Procedure

24. As a general matter, the United States Court of Appeals for the Sixth Circuit has held that

"Rule 24 should be broadly construed in favor of potential intervenors." *Stupak-Thrall v.*

*Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) (internal quotations omitted).

   Rule 24(a) provides:

   On timely motion, the court must permit anyone to intervene who:
   * * *
   (2)    claims an interest relating to the property or transaction that is the subject of
          the action, and is so situated that disposing of the action may as a practical
          matter impair or impede the movant's ability to protect its interest, unless
          existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). The Sixth Circuit has extrapolated the following four elements from Rule

24(a) that must be satisfied to establish a right to intervene:

   (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial
   legal interest in the subject matter of the case; (3) the proposed intervenor's ability
   to protect their interest may be impaired in the absence of intervention; and (4) the
   parties already before the court cannot adequately protect the proposed intervenor's
   interest.

*Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007).

   Even if a party is not entitled to intervention as a matter of right, the Court has discretion

to allow for permissive intervention. *See Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*,

No. 2:07–cv–1190, 2010 WL 2670853, at *3 (S.D. Ohio June 29, 2010) (explaining that the Court is not bound to consider only one subsection of Rule 24, and is free to consider permissive intervention). Under Rule 24(b), the Court may allow "[o]n timely motion" a party to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Court should also balance the factors of "undue delay, prejudice to the original parties, and any other relevant factors . . . ." *Michigan State AFL–CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997).

"Regardless of whether a movant requests intervention of right or permissive intervention, the preliminary determination to make is whether the motion was 'timely' made." *Shy v. Navistar Intern. Corp.*, — F.R.D. —, 2013 WL 485808, at *3 (S.D. Ohio 2013). In evaluating timeliness the Court considers:

> 1) the point to which the suit has progressed; 2) the purpose for which intervention is sought; 3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; 4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and 5) the existence of unusual circumstances militating against or in favor of intervention.

*Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011) (internal citation omitted). "No one factor is dispositive, but rather the determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances." *Id.* (internal quotation omitted).

### 2.    Discussion

Chesapeake moves to intervene in this case as a matter of right or, in the alternative, permissibly. Plaintiffs oppose intervention maintaining, in part, that Chesapeake's motion is

11

untimely and that it will suffer prejudice from intervention. Triad does not oppose intervention.

Upon review, the Court finds intervention proper under the circumstances of this case. First, considering the totality of the circumstances, the Court finds that Chesapeake's Motion was sufficiently timely. Chesapeake moved for intervention in May 2013. Although this case was filed—in state court—approximately eleven months before the Motion for Intervention, discovery has not yet closed and dispositive motions are not due until the end of September. *See Shy*, 2013 WL 485808 at * 3 (explaining that the progression of the suit "is most relevant when the motion arrives at a point in time that would require reopening discovery, delaying trial, or some other prejudicial delay to the parties"). Moreover, the record reflects that Chesapeake moved to intervene within two months of receiving discovery subpoenas relating to this action. Plaintiffs stress that the parties already filed Motions for Summary Judgment in this action, as to Count One of the Second Amended Complaint, in February 2013. Nevertheless, Chesapeake promptly filed its own dispositive motion relating to the same basic issue. Under these circumstances, the Court finds that any delay to this case from intervention will be minimal.

Second, even assuming that Chesapeake fails to meet all of the remaining elements of intervention as a matter of right, permissive intervention is appropriate. Chesapeake's defense in this action will obviously share common facts and legal issues with the main action. Specifically, Chesapeake's interest in this matter arises from the same series of Leases and centers around the same interpretation of Preferential Right to Renew provision. The Court also finds that intervention will cause minimal, if any, prejudice to the original parties. Once again, the Court anticipates no significant delay will result from Chesapeake's intervention in this action. As detailed further below, the Court will expedite any further briefing of Chesapeake's

12

Motion for Summary Judgment so that the Court will be able to promptly consider the pending Motions.[10]

## C.     Motion to Alter Judgment

Finally, the Court will consider Triad's Motion to Alter this Court's June 5, 2013 Order. On June 5, 2013, the Court denied without prejudice Triad's Motion for Tolling of the Term of Plaintiffs' Leases. The Court reasoned that any decision on tolling would be premature because the underlying merits of Plaintiffs' claims are not yet resolved. Triad now moves for the Court to reconsider this determination.[11] Triad maintains that this Court's June 5, 2013 Order creates the possibility of a manifest injustice because there is a possibility certain Leases will expire before the Court rules on the merits of Plaintiffs' claims.

The Court has authority, both under common law and the Federal Rules of Civil Procedure, to reconsider interlocutory orders before the entry of final judgment. *See In re Life Investors Ins. Co. of Am.*, 589 F.3d 319, 326 n.6 (6th Cir. 2009) ("[A] district court may always reconsider and revise its interlocutory orders while it retains jurisdiction over the case."). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004); *see also Tennessee Protection & Advocacy, Inc. v.*

---

[10] Although Plaintiffs response time has technically run, because the Court is only now permitting intervention, it will allow for an additional, expedited, response period.

[11] Within the caption of its Motion, Triad also submits an alternative request for a "temporary injunction." Triad, however, makes no attempt to satisfy the standards of Federal Rule of Civil Procedure 65.

*Wells*, 371 F.3d 342, 348 (6th Cir. 2004) (defining manifest injustice as "[a]n error in the trial court that is direct, obvious, and observable").

Upon review, the Court finds reconsideration or alteration of its previous order unnecessary. Moreover, Triad fails to satisfy the standards for reconsideration, including manifest injustice. At best, the authority Triad cites reflects that it may be permissible for the Court to consider tolling prior to resolving the merits of the parties' Lease dispute. The Court, however, still finds that the most prudent course—at least under the circumstances of this case—is to evaluate the merits of the Lease dispute before considering the potential application of tolling. Although the Court recognizes that this lawsuit places Triad in a position of uncertainty as to the Leases, such uncertainty is not unique to the litigation. Moreover, with regard to its fear of losing the Leases even if successful, the Court notes that Triad has already filed notices of *lis pendens* in this case. *See Wells Fargo Bank, N.A. v. Nelson*, No. 1:09-CV-00090, 2009 WL 1651533, at *2 (S.D. Ohio June 10, 2009) ("[T]he *lis pendens* doctrine is [] a procedural device designed to protect the status quo until a party's substantive rights in an item of property can be determined.").

**D.    Remaining Matters**

As mentioned above, both Plaintiffs and Triad filed Motions for Summary Judgment as to Count I of the Second Amended Complaint in February 2013, which remain pending. (ECF Nos. 44, 52.) Chesapeake filed its own Motion for Summary Judgment on Count I in June 2013. (ECF No. 94.) As the Court is allowing Chesapeake to intervene, the Court will allow Plaintiffs

14

**SEVEN (7) DAYS** to respond expressly to Chesapeake's Motion.[12]  Chesapeake may then reply

within **SEVEN (7) DAYS** of any response.  The Court will then address the Motions

collectively.

### III.  CONCLUSION

For the foregoing reasons, Triad's Motion to Dismiss Second Amended Complaint

Counts Two, Four, and Five (ECF No. 45) is **GRANTED** in part and **DENIED** in part;  the

Motion to Intervene by Chesapeake Exploration, L.L.C. and CHK Utica, L.L.C. (ECF No. 80) is

**GRANTED**; and Triad's Motion to Alter this Court's June 5, 2013 Order (ECF No. 93) is

**DENIED**.  Plaintiffs shall submit any response to Chespeake's pending Motion for Summary

Judgment within **SEVEN (7) DAYS**.  Chesapeake shall submit any reply within **SEVEN (7)**

**DAYS** of the response.

**IT IS SO ORDERED.**


_____8 - 8 -2013_____
**DATE**

_____
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[12]  If Plaintiffs wish to simply rely on their own Motion for Summary Judgment, and
previous briefing, they may file a notice with the Court.